In re HINES.

(Supreme Court, Appellate Division. First Department. December 30, 1910.)

1. ELECTIONS (§ 154*)—PRIMARIES—REVIEW BY COURT.

Election Law (Consol. Laws, c. 17) § 70, provides that any action or neglect of any inspector of primary election, etc., shall be reviewable by mandamus or certiorari, and that the Supreme Court or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction upon complaint of any citizen to review such action or neglect. *Held*, that an application under the statute would be denied where it appeared that, if all the ballots cast at a primary and returned as void were counted for petitioner, his opponent would still have a majority.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

2. ELECTIONS (§ 126*)—PRIMARIES.

Ballots cast at a primary were not invalid because when folded the impression of one name on the face of the ballot was discoverable upon the back thereof, the same being printed in large letters and in black faced type; it being shown that the paper complied with the law and was obtained from the board of election, that the ballots were printed by the firm which for years had done all the election printing, and where no fraud was shown, and there was no statutory requirement as to the size and kind of type.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 118; Dec. Dig. § 126.*]

———————
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

3. ELECTIONS (§ 154*)—PRIMARIES—REVIEW OF COURT.
　　　Election Law (Consol. Laws, c. 17) § 70, provides that any action or neglect of any inspector of primary election or of any public officer or board with regard to the right of any person to participate in a primary election, convention, or committee, or with regard to any right given to or duty prescribed for any voter, political committee, political convention, officers or board shall be reviewable by mandamus or certiorari, and that the Supreme Court, or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction upon complaint of any citizen to review such action or neglect. The board of election is the custodian of primary records, with which is to be filed under section 61 the written statement of the result for each election district in each primary district by the board of primary inspectors, and it is its duty under section 63 to canvass the statements so filed and to issue certificates of the result. *Held* that, where a petition under section 70 to review the conduct of a primary election and the count of ballots by the inspectors resulted in an order to show cause which was only served on the board of elections, the petition would be denied.
　　　[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

4. ELECTIONS (§ 154*)—PRIMARIES.
　　　The office of member of the county general committee of a party is such an office that title thereto may be questioned under the statute.
　　　[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

Appeal from Special Term, New York County.

Petition by James J. Hines to review, pursuant to section 70 of the election law, the action and neglect of the inspectors of primary districts in the Ninteenth assembly district of the City of New York, who acted as such at the primary election of the Democratic party held on September 13, 1910. From an order denying the application, petitioner appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Edwin P. Kilroe (Richard W. Weldon, of counsel), for appellant.

Jacobs & Livingston (Samuel L. Jacobs, of counsel), for respondent James Ahearn.

Archibald R. Watson, Corp. Counsel (Terence Farley, of counsel), for respondent Board of Elections of the City of New York.

CLARKE, J. On September 13, 1910, a primary election for delegates to various conventions and for members of the county general committee for the year 1911 of the Democratic party was held in the Ninteenth assembly district of the county of New York. On the 1st of October, upon the petition of James J. Hines, and certain supporting affidavits, an order to show cause was made, returnable on October 4th, which provided as follows:

"Let the board of elections of the city and county of New York and their respective boards of primary election districts of the 19th assembly district, which acted as such during the aforesaid primary election of the Democratic party on the 13th day of September, 1910, or their attorneys, show cause why (1) the actions and neglect of the said board of elections and inspectors should not be reviewed by this court; (2) why the returns should not be corrected by counting certain ballots headed by the name James J. Hines that were rejected as void by the said inspectors; and (3) why an order should not be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

entered declaring void all the ballots cast at said election that were headed by the name James Ahearn on the ground that said ballots violated the provisions of section 55 of the election law; or in the alternative why an order should not be entered declaring the said primary election to be fraudulent, illegal and void * . * * and why the complainant and the candidates on the ticket [Exhibit A], headed by this complainant at the said primary election should not have relief or aid for the frauds committed upon them during such election, and if necessary why a referee should not be appointed by this court to take evidence on the issues herein."

And the order further provided that service thereof on the secretary or on the president of the board of elections of the city of New York on or before the 3d day of October, 1910, shall be deemed sufficient service.

The allegations of the petition or the complaint as it is called may be classified under three heads: (1) That there were 81 ballots which had wrongfully been declared void and returned as not counted by the inspectors, of which 70 were headed by the name of the complainant and 11 by that of his opponent, Ahearn; (2) that all of the ballots for the ticket headed by Ahearn were void and illegal because Ahearn's name was printed thereon in large letters and in black faced type, so that it could be discerned through the back of the ballot when folded, so that the watchers were advised of every ballot cast for that ticket when cast which was a violation of the secrecy of the ballot and gave an opportunity for fraud; (3) general allegations of fraudulent practices which vitiated the election.

The learned court denied the application by an order made on the 24th of October, 1910. The first ground of complaint was disposed of by showing that as Ahearn had received 1,084 votes and Hines 922, a majority for Ahearn of 162, that, if all the ballots returned as void were counted as claimed, Ahearn would still have a majority of 92 votes, and the result would not be changed.

As to the second ground, it having been shown that the paper upon which the ballots were printed complied with the law and was obtained from the board of elections of the city of New York, was identical with that used by the faction headed by the complainant and obtained from the same source, that the ballots were printed by the firm of printers which had for years done all the election printing for the city of New York, and there were no provisions in the statute prescribing the size and kind of type to be used upon the ballots in primary elections, the court held, as no evidence of fraud was shown, the court would not disfranchise upwards of 1,000 voters who had the right to presume the ballot furnished them to be correct because it subsequently transpired that when folded the impression of one name upon the face of that ballot was discoverable upon the back.

We are in entire accord with these two conclusions, and think nothing need be added to the opinion of the Special Term thereon. The general allegations of fraud in the conduct of the election were not considered in the opinion, and require consideration by us.

The conventions to which the delegates were declared to have been elected have been held and the candidates therein nominated have been voted for at the general election held on the 8th day of November. It

is obvious that nothing that the court could now do touching the primary and the conventions could have any effect upon the candidates who have been successful at the general election. But the general committee of the Democratic party, members of which from the Nineteenth assembly district were voted for and declared elected at the primary election in question, hold office for the ensuing year, and their right to such office is therefore not an academic, but a live and present, question. The inquiry, therefore, is: Can such right and title to office be tested by the proceeding at bar?

It is brought under section 70 of the election law, being chapter 17 of the Consolidated Laws, chapter 22 of the Laws of 1909, and provides as follows:

"Jurisdiction of and review by the courts. Any action or neglect of the officers or members of a political convention or committee or of any inspector of primary election or of any public officer or board with regard to the right of any person to participate in a primary election, convention or committee, or to enroll with any party or with regard to any right given to or duty prescribed for any voter, political committee, political convention, officers or board by this article, shall be reviewable by the appropriate remedy of mandamus or certiorari, as the case may require. In addition thereto, the Supreme Court, or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction upon complaint of any citizen, to review such action or neglect. Such a complaint shall be heard upon such notice as the said court or justice or judge thereof shall direct. In reviewing such action or neglect, the court, justice or judge shall consider but need not be controlled by any action or determination of the regularly constituted party authorities upon the questions arising in reference thereto, and shall make such decision and order as, under all the facts and circumstances of the case, justice may require. For any of the purposes of this section service of a writ of mandamus, certiorari, order or other process of such court, justice or judge thereof, upon the chairman or secretary of such convention, committee or board shall be sufficient."

The order to show cause herein was served upon the board of elections. That board is the custodian of primary records with which is to be filed under section 61 of the election law the written statement of the result for each election district in each primary district, by the board of primary inspectors; and it is its duty, under section 63, to proceed to canvass the statements so filed and to issue certificates of the result. Such duties are purely ministerial (People ex rel. Calihan v. Hunt, 75 App. Div. 33, 77 N. Y. Supp. 973), and no power is conferred upon the board to go behind the returns or statements of the boards of primary inspectors so filed and determine whether or not frauds have been perpetrated at the polls. So that the power given to the court, by section 70, supra, to review any action or neglect of the officers or members of a board by the appropriate remedy of mandamus or certiorari or summary jurisdiction, must be confined to such matters as the board being reviewed had jurisdiction of.

The board of elections, as the custodian of primary records, did nothing which it was not its duty to do, nor did it fail or neglect to do anything which was its duty to do touching the fraudulent practices alluded to in the complaint. Its duty to the voters at the polls and the boards of primary election inspectors was to file the statements, to canvass the same upon the face thereof, to certify the result thereof, and

issue certificates of election thereon. It cannot be that after an election has been had, and the title to office of those declared elected thereat is questioned upon the ground of fraudulent practices by the voters at the polls at such election, such question is to be determined by summary proceedings under section 70, supra, instituted by process served only upon a ministerial board against which no charges of fraud are made, which had no power to review the acts of electors, which dealt solely with the face of written returns sent to it by other public officers, to wit, the inspectors of election, and whose functions are accurately summed up in its title of custodian.

In People ex rel. Coffey v. Democratic Committee, 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674, Parker, C. J., said:

"The term of 'office' of a member of the general committee, for such the statute declares it to be, is for a period of one year, but is to commence at a time fixed by the rules and regulations of the party, except that it shall not be later than the 1st day of January succeeding their election. And the general committee is commanded to meet and organize 'on the day fixed by the rules and regulations of the party.' At that meeting a member elected at the preceding town or ward primary may appear to assume the duties of the office to which he has been elected, and the production of a certificate of election from the 'custodian of primary records, or a duplicate thereof, shall be sufficient to entitle the person named therein to be admitted to the * * * committee to which he shall have been elected.' * * * The statute that calls the general committee into existence makes the certificate of the 'custodian of primary records' proof of his election and right to exercise the duties of a member of the committee."

We think the office of member of the county general committee is such an office that title thereto may be questioned in the courts upon the ground of fraud at the election. If the term of office has commenced, then the procedure must, it seems to us, be of a similar character to that taken in the case of a public officer or of an officer of a corporation. It has been held that a court of equity has no jurisdiction to try title to office. "Elections to office, whether public or corporate, were never in England nor in this state, up to the date of the Code, matters of equitable consideration. They depended only on legal inquiries and legal principles and no instance can be found in which title to office has been dealt with by the courts on any other basis. People v. Albany & Susquehanna R. R. Co., 57 N. Y. 166," and the other cases collected and cited in Moir v. Provident Savings Life Assurance Society, 127 App. Div. 591, 112 N. Y. Supp. 57.

In Matter of Rabbitt v. Garand, 89 App. Div. 119, 85 N. Y. Supp. 473, a proceeding had been instituted to review the action or neglect of the board of inspectors of primary elections in an election district upon allegations of fraud and misconduct of the inspectors, who appeared upon the return of the order to show cause, raised a preliminary objection to the jurisdiction of the court, and also filed an answer. The preliminary objection was overruled, and testimony was taken before the justice establishing the truth of the allegations. The answer was subsequently withdrawn, so that upon the appeal the question presented was solely as to the jurisdiction of the court. It was under these circumstances that the court said:

"If the acts of those inspectors complained of and proven here do not present a case where an 'action or neglect' of an inspector of primary election

or of a public officer or board with regard to a right given to any elector and with regard to a duty prescribed for an officer or board by the law may be summarily reviewed by the court or a justice thereof and be remedied by such an order as justice requires, it would be difficult to conceive an action or neglect, under the law, which is. It was the duty of the inspectors to make a true and honest statement of the votes cast, and it was the right of every elector to have that duty faithfully performed."

And held:

"The justice before whom this case was heard had jurisdiction under the facts appearing here of the subject-matter, and by standing on their objection to the jurisdiction of the justice the appellants should not now be heard on the merits. The Legislature had the power to provide a summary remedy to review the action or neglect of inspectors or boards under the primary election law, and the facts and circumstances appearing here were such that justice required the making of the order appealed from."

This court also in Matter of Coughlin, 137 App. Div. 283, 121 N. Y. Supp. 980, affirmed on opinion of Scott, J., 198 N. Y. 613, 92 N. E. 1082, expressed the 'opinion that the court had power in a proper case to summarily set aside a fraudulent primary election and order a new election.

The difficulty we have is that treated as a summary proceeding to review the action of inspectors of the primary election this proceeding was not instituted against such inspectors. They are not before the court, and not one of them was served with process. Their acts and proceedings are not to be condemned without allowing them an opportunity to be heard in their own defense. This proceeding cannot be considered a direct proceeding to test the title to office because no such summary power is conferred by the statute; nor have the persons holding the certificates of election, which at least confer prima facie title, been brought into court. The summary review is confined to official acts, but the officials whose conduct is in question are not before the court.

For these reasons the order appealed from should be affirmed, with $10 costs and disbursements. All concur.