## In re TENJOST.

(Supreme Court, Appellate Division, Fourth Department.   January 22, 1916.)

1. ELECTIONS ⊂⊃154—PRIMARY ELECTIONS—JUDICIAL REVIEW—ORDER FOR PRODUCTION OF BALLOTS.

Election Law (Consol. Laws, c. 17) § 56, added by Laws 1911, c. 891, § 29, and amended by Laws 1913, c. 820, § 28, provides for a summary review of the election of members to any party committee by the Supreme Court or a justice thereof, including the action of any inspector of primary elections and of any custodian of primary records in canvassing and certifying the result of the election.   Section 85, formerly section 60, renumbered and amended by Laws 1911, c. 891, § 46, as amended by Laws 1913, c. 820, § 38, provides for canvassing the votes by the primary inspectors, a majority of whom shall determine the validity of the ballots, and that ballots rejected as void and those protested as marked for identification shall be inclosed in a separate sealed package.   Section 87, formerly section 61, as amended by Laws 1909, c. 240, § 23, renumbered and amended by Laws 1911, c. 891, § 48, and amended by Laws 1915, c. 678, § 10, provides that the result of such canvass shall be certified in writing by the inspectors and the original statements filed with the custodian of primary records.   Section 88, renumbered and amended by Laws 1911, c. 891, § 49, and Laws 1913, c. 820, § 40, provides that after the canvass all the ballots other than the protested and void ballots shall be sealed in the ballot boxes and returned to the officer from whom they were received, subject to production upon order of court after not less than 30 days after the election, and that in a contest any candidate shall be entitled to an examination of any primary ballots.   Section 89, added by Laws 1911, c. 891, § 50, as amended by Laws 1913, c. 820, § 41, and Laws 1914, c. 244, § 10, requires the custodian of primary records to canvass the statement of the result and deliver a certificate of election to the successful candidate.   *Held* on a contest of an election as member of a state party committee, that an order requiring the custodians to produce all ballots for re-examination and recanvass in the presence of the contestant and the contestee, the custodian, and the election inspectors was within the power of the court.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136;   Dec. Dig. ⊂⊃154.]

2. ELECTIONS ⊂⊃154—PRIMARY ELECTIONS—REVIEW—SCOPE.

In such case, the review being summary and special, and where the action of each board of election officers contributed to the incorrect result, and might practicably be reviewed in one proceeding, there was no objection to such course, except of a proceeding against the officers of each district separately.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136;   Dec. Dig. ⊂⊃154.]

Merrell, J., dissenting.

Appeal from Special Term, Erie County.

Application of William Tenjost to review the action of inspectors of primary election, etc., in the city of Buffalo.   From an order, as modified, requiring the custodians of ballots to produce them for reexamination and recanvass, Valentine A. Truszkowski appeals.   Affirmed.

See, also, 169 App. Div. 300, 154 N. Y. Supp. 708.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, and MERRELL, JJ.

Gibbons & Pottle, of Buffalo, for appellant.

E. W. McIntyre and Carleton H. White, both of Buffalo, for respondents.

KRUSE, P. J. Valentine A. Truszkowski, the appellant, and William Tenjost, respondent, were rival candidates for member of the Republican state committee in the Sixth assembly district of Erie county, at the election held in the fall of 1914. According to the votes as canvassed by the board of elections, based upon the returns made by inspectors of election of the several election districts, it appeared that Truszkowski had been elected. Tenjost challenged the correctness of the result, and upon his application an order was made on the 12th day of October, 1914, at the Erie Special Term, to review the election. The order required the board of elections to produce before the court all of the ballots cast in each of the election districts of the assembly district, for examination by Tenjost or his authorized agents, and to show cause why Tenjost should not be declared elected. The order provided for its service upon the members of the board of elections, the custodians of the primary records, and also upon Truszkowski; but the inspectors of election of the several election districts were not served or made parties to the proceeding. The ballot boxes were produced in court and opened and the ballots recanvassed by the Presiding Judge. Some of the ballots which had been rejected by the inspectors of election were counted, and others which had been counted by them rejected. Upon such recanvass, it was determined that Tenjost had been elected, and the certificate which had been issued by the board of elections to Truszkowski was canceled, and the custodians of the primary records were directed to issue a certificate of election to Tenjost. From that order an appeal was taken by Truszkowski, and upon such appeal this court held that the statute did not authorize such recount and a declaration of a different result, based thereon, in a proceeding against the custodians of the primary records alone, and reversed the order. In re Tenjost, 169 App. Div. 300, 154 N. Y. Supp. 708.

Thereupon this proceeding was commenced. An order to show cause was made on September 7, 1915, upon the petition of Tenjost, returnable at the Erie Special Term. After a hearing, and on the 12th day of September, 1915, the order under review was made. This proceeding is like the former, save that the inspectors of election are made parties and directed to appear, as well as the custodians of the primary records. The order requires the custodians to again produce all ballots for examination and recanvass, provides that Truszkowski and Tenjost may be present in person and by counsel, that the examination shall be made in the presence of the custodians of the primary records or by some employé of their department designated by them, and that the election inspectors may likewise be present in person or by counsel. Proceedings under the order have been stayed. Truszkowski appeals. Upon the hearing at the Special Term he objected to the proceeding, and moved to dismiss the petition, upon the grounds: (1) Of the insufficiency of the petition to state facts to authorize the

relief prayed for, contending that many of the facts recited in the petition to be stated upon knowledge of the petitioner are such that it is impossible for him to have had such knowledge; (2) that many proceedings have been improperly united, and that the proper practice requires a proceeding against the officers of each district separately, instead of one proceeding against all of the officers of the several districts.

1. The affidavits in opposition to the order tend to show that the ballot boxes have not been kept locked and the ballots preserved as they should have been. I am of the opinion, however, that the affidavits are not so conclusive upon that point as to require a reversal of the order upon that ground. That question can better be determined upon the hearing before the Special Term.

[1] 2. As to the power of the court to make the order, the statute seems to be ample. It provides for a summary review of the election of members to any party committee before the Supreme Court or a justice thereof. Election Law (Laws of 1909, c. 22; Consolidated Laws, c. 17). That review includes the action of any inspector of primary elections and of any custodian of primary records in canvassing and certifying the result of the election. Section 56, added by Laws of 1911, c. 891, § 29, and amended by Laws of 1913, c. 820, § 28.

The act provides for canvassing the votes by the primary inspectors. All questions touching the validity of the ballots or their conformity with the provisions of the act are to be determined by a majority vote of the inspectors. All ballots rejected as void and all ballots protested as marked for identification are to be inclosed in a separate sealed package. Section 85, formerly section 60, renumbered and amended by Laws of 1911, c. 891, § 46, amended by Laws of 1913, c. 820, § 38.

The result of such canvass is to be certified in writing by the inspectors and the original statements filed with the custodian of primary records. Section 87, formerly section 61, as amended by Laws of 1909, c. 240, § 23, renumbered and amended by Laws of 1911, c. 891, § 48, and amended by Laws of 1915, c. 678, § 10.

After the close of the canvass all the ballots except the protested, void, and wholly blank ballots are to be tied together, labeled, and replaced in the ballot boxes, locked and sealed, and together with the boxes containing the stubs returned to the officer from whom they were received, who is required to keep the same safely, subject, however, to be produced upon order of any court of record or judge thereof, for not less than 30 days after such primary election, or until all suits or proceedings before any court or judge touching the same shall have been finally determined, when the ballots and stubs shall be removed and without examination destroyed.

"In the case of a contested nomination for office or a contested election to a party position any candidate shall be entitled as of right to an examination in person or by authorized agents of any primary ballots upon which his name lawfully appeared as that of a candidate; but the court shall prescribe such conditions, as of notice to other candidates or otherwise, as it shall deem to be necessary and proper. The custodian of primary records shall preserve for at least two years all books, records, petitions, objections, certificates and

papers filed with him under any provision of law for a period of at least two years, at the expiration of which time all such books, records, petitions, objections, certificates and papers may be destroyed by such custodian." Section 88, renumbered and amended by Laws of 1911, c. 891, § 49, amended by Laws of 1913, c. 820, § 40.

The custodian of primary records is required to canvass the statements of the result, and in a case like this he is required to deliver to the successful candidate a certificate of his election. In certain other cases he must certify the result of his canvass to the secretary of state for the canvass to be made by the latter. Section 89, added by Laws of 1911, c. 891, § 50, and amended by Laws of 1913, c. 820, § 41, and Laws of 1914, c. 244, § 10.

The respondent claims that mistakes were made against him in canvassing the votes in every election district and by every board of election officers having to do with the canvass. While that is not very satisfactorily shown, I think enough appears to uphold this preliminary order.

[2] 3. As to the question of reviewing the action of all of the election officers in one proceeding, it is to be observed that this is not an ordinary action. It is summary and special, and where, as is here claimed, the action of each board of election officers contributed to the incorrect result, and it is practicable to review the matter in one proceeding, I can see no objection to that course. The votes of but one board of elections district are involved. I think the order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements to respondent against appellant.

FOOTE and LAMBERT, JJ., concur.

MERRELL, J. I dissent. To authorize the granting of an order to examine the ballot boxes and their contents, compliance with the statute relative to their custody and preservation immediately following the close of the canvass of the votes should be shown. Not only do the moving papers fail in this respect, but an entire disregard of the statute appears to have occurred. Section 88 of the Election Law provides that, after the close of the canvass of the votes at an official primary election, the ballots cast shall be replaced in the ballot boxes from which they were respectively taken, and such boxes shall then be securely locked and sealed, and returned to the officer from whom they were received, to be by him safely kept awaiting a judicial examination thereof for 30 days and until the final determination of any suit or proceeding touching the same.

It conclusively appears by the affidavits read in opposition to this application that the ballot boxes were not sealed and locked as required by law. In fact, no seals appear to have been placed thereon that would prevent the boxes being opened at any time. In some instances the keys to the boxes were left in the locks, and in view of the fact that there were but two different styles of keys in use by which these boxes might be opened it is evident that carelessness in this regard was of considerable importance. Following the canvass

of the ballots, the boxes did not remain in the custody of any proper official pending their removal to the officer from whom they were received, but were left unguarded in the polling places until they were removed the same night and the day following by employés of Keller Bros., cartmen, employed for such purpose. Said employés of the carting concern held master keys to all the voting places and had no official standing. During the removal of the boxes they were accompanied by no official. That the statute was disregarded in the respect mentioned appears conclusively by the affidavits of Frank Gibbons, Percy S. Lansdowne, Roscoe R. Mitchell, John T. Ryan, Paul J. Batt, William J. Beyer, and Frank J. Schmidt, read in opposition to this application, and the allegations of irregularities contained in said affidavits are practically undisputed by the moving papers.

Under such circumstances, I do not think the applicant has laid a proper foundation to obtain the order appealed from, and the same should be reversed.